On Application for Rehearing

THOMAS, Judge. .
. The opinion of April 17, 2015, is withdrawn, and the following is substituted therefor. ...
In April 2011, Chase Home Finance, LLC (“Chase”), filed a complaint in the Baldwin Circuit Court seeking to reform a mortgage deed executed in February 2008 by William Wade Tennant (“Wade”) to reflect that the mortgage was secured by a residential lot instead of a neighboring vacant lot. In its complaint,, Chase also sought, as an alternative remedy, an equitable lien or mortgage against the residential lot, and it sought to set aside a conveyance of the residential lot from Wade to his son, William Blake Tennant-.(“Blake”). Wade and Blake (hereinafter referred to collectively as “the Tennants”) answered Chase’s complaint in June 2011, and in December 2011 they asserted counterclaims against Chase; the Tennants’ coun *1175 terclaims related to Chase’s entry, in August 2010, into the house on the residential lot and its changing a lock on the house.[1] Chase answered the counterclaims and later amended its complaint to add a claim seeking damages for Wade’s failure to comply with the request to correct the mortgage deed under a “Correction Agreement” he had signed in connection with the execution of the mortgage. Chase further requested an award of attorney, fees.
Chase moved for a bifurcated trial of the issues relating to Chase’s complaint • in January 2013, and the trial court granted that motion on February. 8, 2013. The trial court tried the issues of the reformation of the mortgage deed and the setting aside of Wade’s conveyance of the residential lot to Blake on January 13, 2Q14. After the conclusion of the trial, the trial court entered a judgment on January 17, 2014 (“the January 2014 judgment”), in which it ordered that the mortgage deed be reformed to reflect the legal description of the residential lot and in which it set aside the conveyance of the residential lot from Wade to Blake; the January 2014 judgment further declared that Chase’s other claims had been rendered moot or were denied.
The trial court certified the January 2014 judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The Tennants filed a timely postjudgment motion, which the trial court denied. The Tennants appealed the January 2014 judgment to this court; because we lacked jurisdiction, see Ala.Code 1975, § 12-3-10 (setting out this court’s appellate jurisdiction), we transferred, the appeal to the Alabama Supreme Court, which then transferred the appeal back to this court, pursuant to Ala.Code 1975, §. 12 — 2—7(6). This court affirmed, without an opinion, the January 2014 judgment reforming the deed on November 14, 2014. Tennant v. Chase Home Fin., LLC (No. 2130719, November 14, 2014), — So.3d - (Ala.Civ. App.2014) (table). This court denied the Tennants’ application for rehearing, and our supreme court-denied certiorari-review on February 13, 2015. Ex parte Tennant (No. 1140331, February 13, 2015), — So.3d - (Ala.2015) (table).
While the appeal from the January 2014 judgment was pending, Chase moved for a summary judgment on the Tennants’ counterclaims against it. Chase supported its motion for a sumrriary judgment with documentation, including the mortgage agreement and excerpts from the depositions of Wade and Blake, taken in 2012 and 2013, respectively. The summary-judgment motion did not address the Tennants’ counterclaims individually. Instead, the motion requested a summary judgment in Chase’s favor on the Tennants’ counterclaims based on the fact that the mortgage deed had been reformed by the January 2014 judgment and because, Chase contended, it was therefore authorized to enter the house on the residential lot and change the lock to secure the house under Section 9 of the mortgage agreement.
.Section 9 of the mortgage agreement, which is entitled “Protection of Lender’s *1176 Interest in the Property and Rights under the Security Interest,” reads, in its entirety:
“If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is' a legal proceeding that might significantly affect Lender’s interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, or enforcement of a hen which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender’s interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender’s actions can include, but are not limited to: (a) paying any sums secured by a lien'which has priority over the Security Instrument, (b) appearing in court; and (c) paying reasonable attorney fees to protect its interest in the Property and/or rights under the Security Instrument,' including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender my take action under this Section 9, Lender does not have to do so and is not under any obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this section 9. “Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.
“If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee simple title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.”
Chase argued that because the reformation of the deed related back to the date the deed was executed in February 2008, see Monroe v. Martin, 726 So.2d 701, 703 (Ala.Civ.App.1998) (éxplaining that, except in certain instances not here relevant, “reformation, if granted, will be effective as of the date of the instrument to be reformed”), the Tennants’ counterclaims were “moot and fail as a matter of law” and that Chase’s actions in 2010 were-authorized under the mortgage agreement. As factual support for its argument that it had the right to enter the house and change the lock, Chase relied on Wade’s admission in his deposition that he was in default of the mortgage to establish that Wade had “fail[ed] to perform the covenants and agreements contained” in the mortgage agreement. Thus, Chase contended that its August 2010 entry into the house and. its replacement of a door lock with a lockbox was authorized by Section 9 of the mortgage agreement. Regarding the Tennants’ claims relating to chattel, i.e., personal property, Chase stated, without elaboration, that “there is absolutely no evidence that Chase removed any personal property from the residence.”
The Tennants opposed Chase’s summary-judgment motion, arguing in their response that a summary judgment was inappropriate because Chase had admitted *1177 to entering the house and to placing a “defective lockbox” on the house, which the Tennants alleged had led to the house being left “unsecured” and to the house being burglarized. The Tennants noted in their response that Chase had not provided the name of its employee or agent who had entered the house; they further admitted that they did not know whether Chase’s employee or agent had taken anything from the house. The Tennants also briefly alluded to. .the fact that certain discovery was outstanding and that that outstanding discovery formed a basis for denying the summary-judgment motion; however, the record contains no motion to continue the ruling on the summary-judgment motion under Rule 56(f), Ala. R. Civ. P.[2],
The trial court entered a summary judgment in favor of Chase on August 6, 2014 (“the August 2014 judgment”); the August 2014 judgment contained no explanation of the trial court’s reasoning. The Tennants filed a.. postjudgment motion challenging the August 2014 judgment on September 4, 2014. In that motion, among other arguments, the Tennants asserted for the first time that, under Section 7 of the mortgage agreement, Chase was not permitted to enter the house without providing notice of its intent to enter.[3] The trial court denied the Tennants’ postjudgment motion on September 8, 2014, without specifically addressing any of the arguments asserted in the motion. The Tennants filed a notice of appeal to this court on October 17, 2014. We transferred the appeal to our supreme court because we lacked jurisdiction over the appeal under Ala.Code 1975, § 12-3-10, which delineates the appellate jurisdiction of this *1178 court; our supreme court transferred the appeal back to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
■ We review a summary judgment dé novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to ⅝ proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21 — 12(d).
The Tennants argue on appeal that the trial court.erred in entering the August 2014 judgment in Chase’s favor on their counterclaims. The arguments pertinent to the August 2014 judgment that we can discern from the Tennants’ brief on appeal are that Chase did not have authority to enter the house under Section 9 of the mortgage agreement because the house had not been abandoned; that Chase did not have authority to enter the house under Section 7 of the mortgage agreement because Chase did not give notice of its intent to enter the house as required by that section; and that Chase negligently hired a locksmith, who negligently installed a lockbox on the house, resulting in the house being unsecured, which, .in turn, resulted in a loss of personal property belonging to the Tennants.
On appeal, Chase again argues that it was authorized to enter the house under Section 9 of the mortgage agreement. Chase further argues in support of the August 2014 judgment that the Tennants failed to present evidence indicating that any personal property was actually removed from the house; Chase bases this argument on the deposition testimony it submitted in' support of its motion for a summary judgment, which 'Chase says indicated that Wade’s “investigation” of what was missing from the house was “incomplete.” Finally, Chase argues that the Tennants did not produce evidence demonstrating that Chase’s employee or agent took anything from the house.
The Tennants stated four counterclaims: trespass to real estate, trespass to chattel, damage to chattel, and “civil breaking and entering.” The trespass-to-chattel claim and the damage-to-chattel claim aré actually the same claim; a person seeking, recovery for trespass to chattel based on damage to particular chattel may seek money damages. See Womble v. Glenn, 256 Ala. 374, 378, 54 So.2d 715, 718-19 (1951). We note that we have not located any caselaw indicating that a civil action may be maintained for breaking and entering. However, based upon the specific allegations in that counterclaim, we conclude that the count for breaking and entering merely restates the claims asserted in the Tennants’ trespass-to-real-estate and trespass-to-chattel claims, Finally, we note that the Tennants allege in each of their counterclaims that the lockbox placed on the house by Chase’s employee or agent was negligently installed, resulting in the house being unsecured. ‘ These allegations appear to state a cause of action for negligence. Although the Tennants did not *1179 assert- a separate -negligence claim, “[winder [Ala. R. Civ. P.,] Rule 8, we now have notice pleading in simple, concise and direct averments. Precision and niceties are generally no longer necessary since no technical forms of pleading are required.” Prince Furniture Co. v. Stanfield, 386 So.2d 1163, 1164 (Ala.Civ.App.1980). Further, “[u]nder modern rules of civil procedure, pleadings are to be liberally construed in favor of the pleader; the primary purpose of pleading is to give fair notice to adverse parties of a claim against them.”[4] Adkison v. Thompson, 650 So.2d 859, 862 (Ala.1994); see also Johnson v. City of Mobile, 475 So.2d 517, 519 (Ala.l985)(not-ing that, under the rules of notice pleading, pleadings must be “liberally construed with every reasonable intendment and presumption made in favor of the pleader”). Thus, we conclude that the Tennants stated a trespass-to-real-estate claim, a trespass-to-chattel claim, and a negligence claim. .
Chase’s motion for a -summary judgment failed to address the Tennants’ counterclaims separately, which has created difficulty in addressing the claims on appeal and assessing the propriety of the summary judgment. Chase points out that the Tennants did not specifically argue in their postjudgment motion that the trial court erred in failing to limit the summary judgment to the trespass-to-real-estate claim, and the trespass-to-chattel claim. Thus, Chase contends, we may not consider the propriety of the summary judgment insofar as it relates to the .negligence claim. - .
Our supreme court has considered whether a party has sufficiently preserved an objection that the trial court entered summary judgment on a claim not specifically argued in a summary-judgment motion. See Employees of the Montgomery Cnty. Sheriff's Dep’t v. Marshall, 893 So.2d 326, 331 (Ala,2004); see also McKenzie v. Killian, 887 So.2d. 861, 865 (Ala. 2004), overruled on other grounds, Ex parte Capstone Bldg. Corp,, 96 So.3d 77, 88 (Ala.2012). In ■ Marshall, our. supreme court considered whether a summary judgment in favor of the sheriff in both his official and. individual capacities could be affirmed when the sheriff’s summary-judgment motion had not sought a summary judgment on .the individual-capacity claims against the sheriff. Marshall, 893 So.2d at 330. In declining to reverse the summary judgment on the individual-capacity claims, our supreme court stated:
“Since the sheriffs motion did not challenge the plaintiffs’ claims against the sheriff in his individual capacity, the motion did not meet the initial burden of the sheriff in his individual capacity, that is, ‘ “the burden of production, i,e., the burden of making a prima facie showing that he is entitled to summary judgment.” ’ Ex parte General Motors Corp., *1180 769 So.2d 903, 909 (Ala.1999) (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)). However, the record before us does not' reveal whether the plaintiffs objected to the trial court in a timely postjudgment Rule 59(e), Ala. R. Civ. P., motion that the trial court erred in failing to limit the summary judgment to the claims against the sheriff in his official capacity, see Hatch v. Health-Mor, Inc., 686 So.2d 1132, 1132 (Ala.1996) (‘[I]t was error for the trial court to enter a summary judgment as to alb of [the plaintiffs] claims, because one claim ... was not before the trial court on the summary judgment motion’), and Henson v. Mobile Infirmary Ass’n, 646 So.2d 559, 562 (Ala.1994) (‘[W]e observe at the outset that the trial court could not properly enter the summary judgment as to all of [the plaintiffs] claims. Counts one and two ... were not before the trial court on the [defendant’s] motion’). Such a Rule 59(e) motion would have been necessary to preserve such an objection for an appeal ‘because this issue [did] not involve a question of law that ha[d] been the subject of a previous objection and ruling.’ McKenzie v. Killian, 887 So.2d 861, 865 (Ala.2004). Similarly, the plaintiffs have not presented or argued in brief on appeal the issue whether the trial court erred in entering summary judgment on the claims against the sheidff in his individual capacity in the absence of a challenge to those claims in his summary-judgment motion. Accordingly, we do not consider that issue. Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (‘ “An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.”. ’) (quoting Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988)).”
Marshall, 893 So.2d at 330-31.
Unlike the plaintiffs in Marshall, the Tennants filed a postjudgment motion. In that motion, the Tennants did not argue to the trial court that the trial court- had erred in failing to limit the summary judgment to their trespass-to-real-estate claim and their trespass-to-chattel claim. However, the Tennants argued in their post-judgment motion that the. evidence presented in support of Chase’s motion did not indicate that Chase had not left the house “knowingly unsecured” and “wide open for the criminal crowd to have their way with [Wade’s] possessions” by utilizing a negligently installed lockbox, as the Ten-nants had alleged, and that the evidence did not support a conclusion that summary judgment was warranted. The Tennants make similar arguments regarding the negligent installation of the lockbox on appeal. Thus, because the Tennants argued the merits of the summary judgment on the negligence claim, we find this case distinguishable from Marshall.
Regarding the negligence claim, we conclude that Chase neither shifted the burden to the Tennants to present substantial evidence creating a genuine issue of material fact regarding the negligence claim nor demonstrated that Chase was entitled to a judgment on that claim as a matter of law. We note that Chase’s argument that the reformation of the deed somehow absolved it of liability for all the Tennants’ counterclaims does not adequately address the elements of a negligence action, which are “a duty, a breach of that duty, causation, and damage.” Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala.2001). For example, Chase made no argument that it had no duty to the Tennants.
*1181 Furthermore, the evidence in support of Chase’s motion for a summary judgment included Chase’s admission that it had installed the lockbox. The record does not contain evidence indicating that the lockbox was properly installed by a person qualified to do so or evidence indicating that, at the time of its installation, the lockbox secured the house; the only other evidence regarding the lockbox was Wade’s testimony that the lockbox had failed to secure the property. Accordingly, a question of fact exists regarding whether the lockbox was negligently installed or whether it secured the property when it was first installed. We therefore reverse the trial court’s summary judgment insofar as it resolved the Tennants’ negligence claim in favor of Chase.
We next consider the summary judgment on the trespass-to-real-estate claim asserted by the Tennants.[5] “A trespass to property is a wrong against the right of possession or. entry.” Boyce v. Cassese, 941 So.2d 932, 945 (Ala.2006). In order to be actionable, the entry on the land of another must not be authorized; that is, “[i]f a party enters property ... under a legal right, entry ... pursuant to that right cannot constitute a trespass.” Boyce, 941 So.2d at 945. Chase argued in support of its summary-judgment motion that it had a right under Section 9 of the mortgage agreement to enter the house to secure it upon Wade’s default of the mortgage agreement.
As noted above, the January 2014 judgment reformed the mortgage deed to describe the residential lot as the mortgaged property. The reformation of the mortgage deed related back to the date of the' execution of the original mortgage deed in February 2008. See Monroe, 726 So.2d at 703. Thus, although the mortgage deed had not been reformed in 2010 when Chase entered the house, the relation back of the reformed mortgage deed makes Chase’s conduct in 2010 subject to the rights it acquired' in the mortgage agreement. • We must therefore determine whether the evidence supports the conclusion that no genuine issue of material fact exists regarding Chase’s right to enter the house under Section 9 of the mortgage agreement.
A mortgage agreement is construed like any other contract. , “Where a contract, by its terms, is plain and free from ambiguity, there is no room for construction and the contract must be enforced as written.” Austin Apparel, Inc. v. Bank of Prattville, 872 So.2d 158, 165 (Ala.Civ.App.2003). Section 9 of the mortgage agreement provides Chase the authority to, upon ’default, enter and secure the' real property sechring the mortgage. Section 9 of the mortgage agreement further indicates that securing the real property may include changing the locks on the mortgaged real property. Wade admitted in his ‘deposition that he was in default of the mortgage agreement in August 2010. Thus, under Section 9 of the mortgage agreement, Chase was authorized to enter the house to secure it, which specifically *1182 included the right to change, the lock on the house. See PNC Bank, N.A. v. Van Hoornaar, 44 F.Supp.3d 846, 856 (E.D.Wis.2014) (construing language identical to that found in Section 9 of the mortgage agreement, which authorizes a mortgagee to enter and secure the real property upon a mortgagor’s “failure] to perform the covenants -and agreements” of the mortgage agreement, to permit the mortgagee to enter and change locks on the subject property upon a failure of the mortgagor to make payments as required by the mortgage)..
The Tennants do not challenge Chase’s contention that Section 9 of the mortgage agreement permitted Chase to enter the house upon Wade’s default on his mortgage payments. Instead, the Tennants argue that Chase entered the house based on what they contend was Chase’s erroneous and unsupportable conclusion that the house had been abandoned. According to the Tennants, the evidence presented to the trial court in support of and in opposition to. the motion for a summary judgment created a genuine issue of material fact regarding whether the house had been abandoned. Although Section 9 of the mortgage agreement also authorizes Chase to enter upon abandonment of the house, the Tennants’ argument that a question of fact regarding whether the house had been abandoned exists does not serve to render the summary judgment on the trespass-to-real-estate claim improper. Chase had the right to enter the house upon Wade’s default. Thus, it matters not whether a genuine Issue of fact regarding whether the house was abandoned remains, because that fact is not material to determining whether Chase properly exercised its right to enter the house based the Wade’s default.
The Tennants asserted for the first time in their postjudgment motion that, under Section 7 of the mortgage agreement, Chase was not permitted to enter the house without providing notice of the intent to enter. Although the trial court had the discretion to consider the new legal argument presented by the Tennants in their postjudgment motion, it was not required to,do so. See Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala.2010). The trial court denied the Tennants’ postjudgment motion four days after it was filed and without comment; thus, we will not presume that the trial court considered the Tennants’ argument concerning Section 7 of the mortgage agreement, and we will not consider that argument further as a basis for reversing the summary judgment in favor of Chase.[6] See Espinoza, 46 So.3d at 416.
Finally, we must consider the propriety of the summary judgment in favor of Chase on the Tennants’ trespass-to-chattel claim. Trespass to chattel occurs when “‘there is a “wrongful taking and carrying away of the property of another.” ’ ” Wint v. Alabama Eye & Tissue Bank, 675 So.2d 383, 385 (Ala.1996) (quoting Michael L. Roberts & Gregory S. Cusi-mano, Alabama Tort Law Handbook § 29.0, at 598 (1990)). The allegations in the Tennants’ counterclaims accuse Chase of taking items from the house and leaving certain items on the lawn. In his deposition, Wade resisted naming items that he considered to be missing from the house when first asked to do so, stating that “I think it would be premature”; he further explained that his inventory was not complete and that “I wouldn’t want to be tied *1183 to those things [I named] only because it’s somewhat ongoing.” However, Wade ultimately testified that he had searched the house for certain items that had been stored there to no avail. He specifically listed a washing -machine, a shotgun, collectible coins, and a portable generator as items he had not been able to locate in the house. Blake testified in his deposition that he did not know of any items belonging to him that were missing from the house.
As noted above, in its motion for a summary judgment on the trespass-to-chattel claim, Chase simply stated that the Ten-nants had “no evidence that Chase removed any personal property from. the [house].” To support its motion, Chase provided the deposition testimony of Wade and Blake. Wade’s testimony, as noted above, indicated that certain items of personal property were missing from the residence after Chase entered it in August 2010. However, Blake testified that he was not aware that any of his personal property was missing.
Based on the evidence presented to the trial court, we conclude that the summary judgment entered in favor of Chase on Blake’s trespass-to-chattel claim was proper. Blake testified that he did not know of any items that belonged to him that had been removed from the house. Thus, by his own admission, Blake has no claim for trespass to chattel. The summary judgment in favor of Chase on Blake’s trespass-to-chattel claim is therefore affirmed.
Wade contends on appeal that Chase’s motion for a summary judgment did not shift the burden of presenting evidence sufficient to create a genuine issue of material fact regarding Wade’s trespass-to-chattel, claim. However, when a summary-judgment movant who does not have the burden of proof at trial asserts in a summary-judgment motion that the non-movant lacks evidence to establish an essential element of his or her- claim, the movant is not required to present evidence of a negative. Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999). The only evidence before the trial court touching on Wade’s trespass-to-chattel claim was evidence indicating that items were missing from the house after Chase entered it in August 2010. To survive Chase’s motion for a summary judgment, Wade was required to present evidence creating a genuine issue of material fact regarding whether Chase’s employee or agent removed personal property from the house. In the alternative, Wade could have sought a continuance under Rule 56(f), see Ex parte General Motors Corp., 769 So.2d at 909 (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)); however, as noted above, he failed to do so. Thus, because Wade failed to present evidence indicating that Chase’s employee or agent removed personal property from the house, we affirm the summary judgment in favor of Chase on Wade’s trespass-to-chattel claim.
In conclusion,' the trial court properly entered the August 2014 judgment in favor of Chase on the Tennants’ trespass-to-real-estate claim and on their trespass-to‘-chattel claim. However, the Tennants’ counterclaims included a négligence claim that Chase’s summary-judgment motion failed to adequately address;' therefore, insofar as the August 2014 judgment relates to that claim, we must reverse that judgment. We note that our reversal of the summary judgment in favor of Chase on the Ten-nants’ negligence claim should not be construed as stating any opinion on the merits of that claim.
APPLICATION" GRANTED; OPINION OF APRIL 17, 2015, WITHDRAWN; *1184 OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED. '
THOMPSON, P.J.; and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. Because the Tennants did not amend their pleadings to assert their counterclaims until less than 42 days before the date the case was first set for trial, see Rule 15(a), Ala. R. Civ. P. (permitting a party to file an amendment without leave of court at any time before 42 days before the date of the first trial setting), and Rule 15(b), Ala. R. Civ. P. (providing that, after 42 days before the first trial setting, a party must seek leave of court to amend a pleading), Chase moved to dismiss the counterclaims, arguing that the Tennants had . failed to seek leave to file the counterclaims; the trial court granted that motion, but it then treated the Tennants’ response to Chase's motion to dismiss the counterclaims as a motion seeking leave to file the countércláims, which it granted.

. The State Judicial Information Sheet indicates that motions to continue were filed before the date of the summary-judgment hear- , ing. Those motions are not contained in the record on appeal, so we cannot discern whether the motions, which appear to have been granted, were merely requests for a continuance based on scheduling conflicts or whether they were even made by the Ten-nants. Furthermore, the Tennants do not argue on appeal that the trial court erred in failing to continue its ruling on the summary-judgment motion pending discovery. Thus, we will not consider that issue in this opinion. See Benton v. Clegg Land Co., 99 So.3d 872, 884 (Ala.Civ.App.2012) (citing Boshell v. Keith, 418 So.2d 89, 93 (Ala. 1982)) (indicating that the failure to make an argument in one’s brief on appeal results in a waiver of that argument).

. Section 7 of the mortgage ágreement, which is entitled "Preservation, Maintenance and Protection of the Property; Inspections,” reads, in its entirety:
"Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically . feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. •' Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments .as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower’s obligation for the completion of such repair or restoration.
"Lender of its agent may make reastínable entries upon and inspections of the Property. If it has reasonable cause, Lender may .inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.”

. We recognize, as urged by Chase', that our supreme court has rejected liberal construction of some pleadings to state particular claims. For example, in Ex parte Burr & Forman, LLP, 5 So.3d 557, 566-67 (Ala.2008), our supreme court declined to conclude that a complaint seeking declaratory and injunctive relief and requesting damages for breach of contract stated a tort claim; notably, the complaint did not contain any words that could have indicated that a tort claim was being pursued. In contrast, the Tennants repeatedly used the phrase "negligently installed’' in their pleading, indicating that they were relying on the failure of the lockbox to secure the house as part of their basis for recovery against Chase; in addition, the Tennants also argued in their response to Chase's summary-judgment motion that Chase had installed a lockbox that "failed to function” or was "defective,” which left the house "unsecured.” Thus, we conclude that "[t]he [Tennants’ pleading] gave to [Chase] adequate notice of the [Tennants’] claims even if it failed to be a paragon of clarity.” Prince Furniture Co., 386 So.2d at 1164.

. We note that the January 2014 judgment also set aside the deed transferring the ownership of the residential lot from Wade to Blake. Thus, it appears that Blake, having no ownership interest in the residential lot and house and, as far as the record divulges, having no right to possession of the real property, may not maintain a trespass-to-real-estate claim. Poff v. Hayes, 763 So.2d 234, 240 (Ala.2000) (explaining that'’a claim alleging trespass to real property may be maintained only by one who owns or has a right of possession in the real property). In light of our resolution of the trespass-to-real-estate claim, however, we see no need to further discuss whether Blake • could maintain that claim after the entry of the January 2014 judgment.

. We note that a similar argument was made and rejected in PNC Bank, 44 F.Supp.3d at 856-57.