**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 07 2016

for CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on JUL 7 2016

Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON IN<br><br>LAURA ZAMORA JORDAN, as her separate estate, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company,<br><br>Defendant. | No. 92081-8<br><br>En Banc<br><br>Filed    JUL 07 2016 |

OWENS, J. — After defaulting on her home mortgage payment, plaintiff Laura Jordan returned home from work one evening to discover she could not enter her own house: the locks had been changed without warning. A notice informed her that in order to gain access to her home, she must call defendant Nationstar Mortgage LLC to obtain the lockbox code and retrieve the new key inside. Although she

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

eventually reentered her home, she removed her belongings the next day and has not returned since. Jordan's home loan was secured by a deed of trust, a commonly used security instrument that was created as an alternative to traditional mortgages to provide for a simpler method of foreclosure. The deed of trust contained provisions that allowed Nationstar to enter her home upon default without providing any notice to the homeowner. Today, we are asked to decide whether those provisions conflict with Washington law.

Jordan represents a class action proceeding in federal court, which has certified two questions to us. The first question asks whether the deed of trust provisions conflict with a Washington law that prohibits a lender from taking possession of property prior to foreclosure. We hold that it does because the provisions allow Nationstar to take possession of the property after default, which conflicts with the statute. The second question asks whether Washington's statutory receivership scheme—providing for a third party to possess and manage property in lieu of either the lender or homeowner—is the exclusive remedy by which a lender may gain access to the property. As explained below, we hold nothing in our law establishes the receivership statutes as an exclusive remedy.

## FACTS

In 2007, Jordan bought a home in Wenatchee, Washington, with a home loan of $172,000 from Homecomings Financial. She secured the loan by signing a deed of

2

trust. The original lender assigned the loan to the Federal National Mortgage Association (Fannie Mae), one of the nation's largest mortgagees that primarily participates in the secondary mortgage market, which hired Nationstar to service the loan.

Jordan went into default on her mortgage payments in January 2011. In March 2011, one of Nationstar's vendors came to Jordan's home and changed the locks on her front door. Jordan returned home to find a notice on the front door informing her that the property was found to be "unsecure or vacant" and that to protect her and the mortgagee's interest in the property, it was "secured against entry by unauthorized persons to prevent possible damage." Order Certifying Questions to Wash. Supreme Ct., *Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR at 6 (E.D. Wash. Aug. 10, 2015). While the above-noted facts are undisputed, the parties dispute whether the home was vacant. Jordan contends she was living there, left for work that morning as usual, and returned to find the lockbox and notice. On the other hand, Nationstar contends that its vendor performed an inspection of the property and determined it was vacant.

Upon finding the notice when she returned home, Jordan called the phone number provided and got the key from the lockbox to reenter her home. She took all of her belongings and vacated the house the next day. Since then, Nationstar's vendor has maintained the property's exterior and winterized the interior. Nationstar does not

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

claim to have attempted to provide Jordan any notice of its intention to inspect the property and rekey it. Nationstar contends that its usual practice is to change the locks on only one door, such that it can access the home in the future, but also so that the owner can still enter the home through another door. Here, Jordan's home had only a front door and a sliding glass door in the rear of the home. Therefore, when Nationstar's vendor rekeyed the front door, she had no means of entry.

Jordan represents a certified class of 3,600 Washington homeowners who were locked out of their homes pursuant to similar provisions in their deeds of trust with Nationstar. This case presents an important issue for these homeowners and the thousands of others subject to similar provisions, as well as the many mortgage companies that have a concern with preserving and protecting the properties in which they have an interest. Three amicus briefs were filed in this case: Federal Home Loan Mortgage Corporation (Freddie Mac) and the city of Spokane supporting defendant Nationstar, and the Northwest Consumer Law Center supporting plaintiff Jordan. Freddie Mac tells us that the provisions such as the ones at issue here are important to the foreclosure process because they allow lenders to enter the property to maintain and secure it. It contends that such provisions help meet Freddie Mac's requirements it imposes on companies like Nationstar to preserve properties.

In April 2012, Jordan filed a complaint against Nationstar in Chelan County Superior Court, alleging state law claims that include trespass, breach of contract, and

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

violations of the Washington Consumer Protection Act and the Fair Debt Collection Practices Act. Ch. 19.86 RCW; 15 U.S.C. §§ 1692-1692p. Chelan County Superior Court certified the class action, with Jordan as the representative for the 3,600 similarly situated homeowners. Nationstar removed the action to the United States District Court for the Eastern District of Washington (District Court). The parties each filed motions for partial summary judgment. Nationstar asked the District Court to find the provisions at issue enforceable under Washington law. Jordan asked the District Court to find that before the lender can enter a borrower's property, the lender must obtain either the borrower's postdefault consent or permission from a court. Furthermore, Jordan contends that receivership is the only remedy by which a lender may gain access to the borrower's property. Finding that the case raised unresolved questions of Washington state law, the District Court certified two questions to us. We accepted the following certified questions.

## CERTIFIED QUESTIONS

1.    Under Washington's lien theory of mortgages and RCW 7.28.230(1), can a borrower and lender enter into a contractual agreement prior to default that allows the lender to enter, maintain, and secure the encumbered property prior to foreclosure?

2.    Does chapter 7.60 RCW, Washington's statutory receivership scheme, provide the exclusive remedy, absent postdefault consent by the borrower, for a lender to gain access to an encumbered property prior to foreclosure?

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

ANALYSIS

Certified questions present questions of law and we review them de novo. *See, e.g., Parents Involved in Cmty. Sch. v. Seattle Sch. Dist., No. 1*, 149 Wn.2d 660, 670, 72 P.3d 151 (2003).

1. *Washington's Lien Theory and RCW 7.28.230(1) Prevent a Borrower and a Lender from Contracting To Allow the Lender To Take Possession Based on Borrower Default*

The District Court asks us to determine whether a predefault clause in a deed of trust that allows a lender to enter, maintain, and secure the property before foreclosure is enforceable. We must determine whether these provisions contravene Washington law. As described below, the deed of trust provisions authorize a lender to enter the borrower's property after default. The parties agree that a Washington statute prohibits a lender from taking possession of a borrower's property prior to foreclosure. The controversial issue here is whether the deed of trust provisions allowing the lender to enter constitute taking possession prior to foreclosure, such that they conflict with state law. Based on Nationstar's practices, we find that the provisions do allow the lender to take possession and thus they are in conflict with state law. As such, we answer the first certified question in the negative.

a. *The Deed of Trust Provisions Allow a Lender To Enter the Borrower's Property upon Default or Abandonment*

"[I]t is the general rule that a contract which is contrary to the terms and policy of an express legislative enactment is illegal and unenforcible [sic]." *State v. Nw.*

6

*Magnesite Co.*, 28 Wn.2d 1, 26, 182 P.2d 643 (1947). While we recognize an overarching freedom to contract, provisions are unenforceable where they are prohibited by statute. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984).

The provisions at issue are made up of two sections in the deed of trust. The first provision, in pertinent part, is as follows:

> 9.      **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.

Ex. 19, at 8. The provisions also allows the lender to "make reasonable entries upon and inspections of the Property" where the lender has reasonable cause and gives the borrower notice. *Id.* at 7. It also requires the borrower to maintain and protect the property. *Id.*

Together, these sections are the so-called "entry provisions" that are at issue in this case, which allow the lender to enter, maintain, and secure the property after the borrower's default or abandonment. Nationstar hinges its argument on the need to

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

secure abandoned property, stating it does not enter occupied property. However, the provision plainly states that the lender may "secure" the property after the borrower defaults *or* abandons the property. The provision specifically lists changing the locks as a method of securing the property. Thus, the provisions authorize the lender to enter and rekey the property solely upon default, regardless of whether the borrower has abandoned the property.

As explained below, it is well settled that Washington law prohibits lenders from taking possession of borrowers' property before foreclosure. This question turns on whether the above provisions authorize lenders to "take possession" and if, in fact, the lender's actions here constituted taking possession.

### b. *Washington's Lien Theory Does Not Permit a Lender To Take Possession of Property Prior to Foreclosure*

Our case law is clear that Washington law prohibits a lender from taking possession of property before foreclosure of the borrower's home. Importantly, the parties agree on this point; under state law, a secured lender cannot gain possession of the encumbered property before foreclosure.

RCW 7.28.230 provides that

(1)     A mortgage of any interest in real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law.[1]

---

[1] Before 1969, this section of the statute ended after "without a foreclosure and sale according to law." CODE OF 1881, § 546. It was amended in 1969 to make clear that the statute should not be

This statute essentially codified Washington's lien theory of mortgages. The mortgage lien theory prevails in Washington, meaning that the mortgage is seen as "nothing more than a lien upon the property to secure payment of the mortgage debt, and in no sense a conveyance entitling the mortgagee to possession or enjoyment of the property as owner." *W. Loan & Bldg. Co. v. Mifflin*, 162 Wash. 33, 39, 297 P. 743 (1931). We have interpreted RCW 7.28.230(1) to mean that a mortgagor's default does not disrupt the mortgagor's right to possession of real property, and that the mortgagor retains the right to possession until there has been foreclosure and sale of the property. *Howard v. Edgren*, 62 Wn.2d 884, 885, 385 P.2d 41 (1963).

The *Restatement (Third) of Property* takes the approach that mortgagee possession agreements conflict with lien theory statutes. *See* RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 4.1 cmt. b (AM. LAW INST. 1997). Several lien theory jurisdictions hold that provisions that allow the lender to take possession of the property contravenes public policy that is inherent to the lien theory; indeed, some states have even codified statutes that specifically invalidate such agreements. *See, e.g.*, COLO. REV. STAT. ANN. § 38-35-117; IDAHO CODE ANN. § 6-104; NEV. REV. STAT. § 40.050; OKLA. STAT. ANN. tit. 42, § 10; UTAH CODE ANN. § 78B-6-1310.

---

interpreted to prohibit a mortgagee from collecting rents before foreclosure. *See* LAWS OF 1969, 1st Ex. Sess., ch. 122, § 1; *and see Kezner v. Landover Corp.*, 87 Wn. App. 458, 464, 942 P.2d 1003 (1997). However, the bedrock principle that borrowers have a right to possession prior to foreclosure was not altered by the amendment.

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

Washington's legislature, however, did not specifically invalidate such contrary agreements in its codification of lien theory prohibiting the lender from taking possession of property before foreclosure. That the legislature did not specifically invalidate such contract provisions, as did other states, does not mean the provisions do not conflict with our laws. Thus, we must determine whether its statute is in conflict with such an agreement.

Nationstar concedes that the borrower's right to possession cannot be overcome by a contrary provision in the mortgage or deed of trust because such a provision would be unenforceable as it would contravene Washington law. Def.'s Answering Br. at 11. However, Nationstar argues that the entry provisions do not authorize the lender to take "possession" and that its specific conduct at Jordan's residence did not constitute possession. Therefore, the determinative issue in answering this first certified question is whether the entry provisions cause the lender to gain "possession." As explained below, the entry provisions do authorize conduct that constitutes "possession."

c. *These Entry Provisions Allow a Lender To Take Possession Prior to Foreclosure and Therefore Conflict with State Law*

We must determine if the entry provisions authorize the lender to take "possession" of the property. If they do, the provisions are in conflict with Washington law. Here, we look to the actions that Nationstar took pursuant to the entry provisions to see if they constituted "possession." Possession has slightly

10

different meanings in different areas of the law. The parties supplied definitions from real property law, tort law, and landlord-tenant law because it is unclear which definition is applicable to RCW 7.28.230(1).

Under any definition, the conduct allowed under the entry provisions constitutes possession because Nationstar's actions satisfy the key element of possession: control. In property law, "possession" is defined as "a physical relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so to exercise such control as to exclude other members of society in general from any present occupation of the land." RESTATEMENT (FIRST) OF PROP.: DEFINITION OF CERTAIN GENERAL TERMS § 7(a) (AM. LAW INST. 1936).

The key element to the property definition of "possession" is the "certain degree of physical control." Tort law similarly requires control. In tort law, which is concerned primarily with liability, a "possessor of land" is defined as "a person who occupies the land and controls it." RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 49 (AM. LAW INST. 2012).

The Court of Appeals applied the tort definition of possession when it considered the phrase "mortgagees in possession" for purposes of premises liability. *Coleman v. Hoffman*, 115 Wn. App. 853, 858-59, 64 P.3d 65 (2003). There, the lender used RCW 7.28.230(1) as a defense to its putative possession to avoid liability, arguing that it could not have been "in possession" because the statute forbids it. *Id.*

at 863. The court relied on the above tort definition of "possession" and another prominent source that stated for a lender to be liable, it must "'exercise dominion and control over the property.'" *Id.* at 859 (quoting 62 AM. JUR. 2D *Premises Liability* § 8, at 356 (1990)). In finding that the plaintiff showed enough facts of lender's possession, the court pointed to the lender's repairs and payments of utility bills. *Id.* at 862-63.

We also find that landlord-tenant law's treatment of "possession" helpful—particularly its analysis of the impact of changing locks. In *Aldrich v. Olson*, the Court of Appeals found that when the landlord changed the locks of her tenant's home, it was an unlawful eviction. 12 Wn. App. 665, 672, 531 P.2d 825 (1975). The court reasoned, "It is difficult to visualize an act of a landlord more specifically intended as a reassumption of possession by the landlord and a permanent deprivation of the tenant's possession than a 'lockout' without the tenant's knowledge or permission." *Id.* at 667.

From any approach, we find that Nationstar's conduct constituted possession. The foregoing possession definitions, as well as *Coleman* and *Aldrich*, are instructive. Nationstar's vendor's actions constituted possession because its actions are representative of control. The vendor drilled out Jordan's existing locks and replaced the lock with its own. Nationstar stated in its brief that it rekeyed Jordan's property to allow itself access to return to secure the property by winterizing it and to make

12

repairs. Def.'s Answering Br. at 33-34. Perhaps that is true; however, rekeying the property also had the effect of communicating to Jordan that Nationstar now controlled the property. The action left Jordan with no method of entering her own property. Nationstar relies on the fact that it did not change the locks to exclude Jordan (because it provided her a lockbox and phone number to call) to provide proof that it did not possess the premises. However, although she was able to obtain a key by calling, the process made Nationstar the "middle man." She could no longer access her home without going through Nationstar. This action of changing the locks and allowing her a key only after contacting Nationstar for the lockbox code is a clear expression of control. Although Nationstar did not exclude Jordan from the premises (as she was able to gain a key and enter), she left the next day and did not return. In its amicus brief, the Northwest Consumer Law Center advised us anecdotally that many similarly situated Washington homeowners felt that when the lender changed the locks to their homes, they no longer had a right to continue to possess the property. *See* Br. of Amicus Curiae Nw. Consumer Law Ctr. at 6.

Nationstar effectively ousted Jordan by changing her locks, exercising its control over the property. Although the mortgagee-mortgagor context is different from the landlord-tenant context, *Aldrich* provides an apt analogy here because the court there found that changing the tenant's locks was the most striking showing of a reassumption of possession. 12 Wn. App. at 667. Changing the locks is akin to

13

exercising control, which is the key element of possession. By changing the locks, Nationstar took possession of the property. Since these actions are authorized by the entry provisions, the entry provisions allow the lender to take possession of the property. Because Washington law prohibits lenders from taking possession of the borrower's property before foreclosure, the provisions are in conflict with state law. Therefore, we must answer the first certified question in the negative and find that the entry provisions are unenforceable.

2.  *Chapter 7.60 RCW Does Not Provide the Exclusive Remedy for a Lender To Gain Access to an Encumbered Property Prior to Foreclosure*

The second certified question asks whether this state's receivership statutes separately prohibit the entry provisions. Specifically, this second question asks whether chapter 7.60 RCW, which provides for the judicial appointment of a third party receiver to manage the property, is the exclusive method by which lenders can gain access to encumbered property prior to foreclosure.

This is an issue of first impression in this court, and no Washington appellate decision is on point. We must answer this question in the negative because nothing indicates that the statutory receivership scheme provides the exclusive remedy for lenders to access a property.

a.  *Background on Receivership and Its Role in Mortgage Foreclosure*

Chapter 7.60 RCW governs Washington's receivership scheme. A "receiver" is a third party appointed by a court to take charge of property and manage it as the

court directs. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON

PRACTICE: REAL ESTATE: TRANSACTIONS, § 18.6, at 310 (2d ed. 2004). The statutes

enumerate some 40 circumstances under which a receiver may be appointed. Only a

few concern mortgaged real property. *See* RCW 7.60.025(1)(b), (g), (cc), (dd).

Although authorized by statute, lenders are not *entitled* to a receiver, even where a

clause in the mortgage provides for the appointment of a receiver. STOEBUCK &

WEAVER, *supra*, § 18.6, at 312. While statutory grounds exist for a court-appointed

receiver prior to foreclosure, it is rarely sought. *Id.* at 314.

In the context of mortgaged real property, a receiver might be appointed as a

"custodial receiver," who would take possession of the property and preserve it.

RCW 7.60.015; 7.60.025(1)(g). Commonly, receivers are appointed to collect rent

from income-producing property. STOEBUCK & WEAVER, *supra*, § 18.6, at 310-11;

*see* RCW 7.28.230(1) (providing grounds for appointing a receiver to collect rent for

application to mortgage). Importantly, nothing in the text of RCW 7.28.230(1) or

chapter 7.60 RCW requires the appointment of a receiver in this context.

Jordan argues that the entry provisions are Nationstar's attempt to contract

around chapter 7.60 RCW's requirements and that the legislature intended for the

statutes to provide lenders an exclusive remedy. However, as explained below,

Jordan's arguments fail to establish that chapter 7.60 RCW does so.

### b. The Contract Provisions Do Not Conflict with Chapter 7.60 RCW

We have held that the deed of trust act in chapter 61.24 RCW cannot be contracted around in two recent cases where parties attempted to modify the deed of trust act's requirements by private contract. *See Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 107, 285 P.3d 34 (2012) (holding that parties cannot contract to fit a statutory definition to fulfill the act's requirements); *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 107, 297 P.3d 677 (2013) (holding that parties cannot contractually waive a requirement under the act that agricultural properties may only be foreclosed judicially).

Jordan argues that like in *Bain* and *Schroeder*, the entry provisions attempt to "bypass" statutes that dictate a lender's only entry method. Pl.'s Opening Br. at 25. However, Jordan misconstrues the receivership statutes as providing a "list of requisites to a lender gaining access to a borrower's property." *Id.* at 28. While the statutes enumerate receivership requirements, they are not concerned with a lender's access to borrower's property but rather merely set forth requirements *should* a receiver be necessary. Thus, the entry provisions do not attempt to circumvent the receivership statutes and thus do not conflict with chapter 7.60 RCW. Similarly, Jordan's other arguments do not support her contention that the receivership statutes provide lenders an exclusive remedy to access property. In fact, as explained below,

16

the text of the statute and policy considerations support a finding that chapter 7.60 RCW does not provide lenders the exclusive remedy.

    c.   *The Statute's Text Supports Finding That It Does Not Provide an Exclusive Remedy*

The text of the statute supports a finding that it does not provide the exclusive remedy. First, the plain language of the statute must be examined to determine exclusivity. We have held that when engaging in statutory interpretation, our "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

Of course, an exclusivity clause would be the clearest indication of the legislature's intent that the statute be exclusive, but as Jordan concedes, this statute does not have one. However, Jordan argues that because the statutory scheme is "comprehensive," the legislature intended for the statute to provide the exclusive remedy for lenders such that they cannot contract for entry otherwise. *See generally* Pl. Opening Br. at 24-37; *and see* LAWS OF 2004, ch. 165, § 1. It is true that the receivership statutory scheme is comprehensive, but the plain language of the statute does not suggest that chapter 7.60 RCW was intended to be an exclusive remedy.

If a court were to appoint a receiver in this context, it would likely be pursuant to RCW 7.60.025(1). Thus, we analyze the question of whether the receivership

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

provides lenders the exclusive remedy under that portion of the provision. The statute provides, in part:

> A receiver *may* be appointed by the superior court of this state in the following instances, but except in any case . . . in which a receiver's appointment with respect to real property is sought under (b)(ii) of this subsection, a receiver *shall* be appointed *only if* the court additionally determines that the appointment of a receiver is reasonably necessary and that *other available remedies* either are not available or are inadequate.

RCW 7.60.025(1) (emphasis added). Subsection (b)(ii) provides that a receiver *may* be appointed after the commencement of a foreclosure proceeding on a lien against real property where the appointment is provided for by agreement or is necessary to collect rent or profits from the property.

In analyzing this text, we look to its plain language. In general, the court's discretion is illustrated by the word "may." Under subsection (b)(ii), a receiver *shall* be appointed, but *only if* the court makes additional findings. First the court must find a receiver is "reasonably necessary." RCW 7.60.025(1)(b)(ii). Second, and more importantly, the court determines that "*other available remedies* either are not available or are inadequate." RCW 7.60.025(1) (emphasis added).

Courts consider all of the facts and circumstances to determine whether to appoint a receiver. *Union Boom Co. v. Samish Boom Co.*, 33 Wash. 144, 152, 74 P. 53 (1903). "It is well established that a receiver should not be appointed if there is any other adequate remedy." *King County Dep't of Cmty. & Human Servs. v. Nw. Defs. Ass'n*, 118 Wn. App. 117, 126, 75 P.3d 583 (2003) (citing *Bergman Clay Mfg.*

18

*Co. v. Bergman*, 73 Wash. 144, 147, 131 P. 485 (1913)). The Court of Appeals reasoned that allowing a current board of directors to oversee a corporation "was not an adequate remedy" and, thus, found that appointment of a receiver was appropriate. *Id.* at 126.

Thus, in general, other remedies exist outside of appointing a receiver. It is not before us to determine what particular remedies are available. To answer this question, it is sufficient that the plain language of the provision does not indicate that chapter 7.60 RCW was meant to provide an exclusive remedy to lenders. Finally, public policy also supports the finding that the statute is not the exclusive remedy, which we discuss below.

### d. Public Policy Supports Finding That Chapter 7.60 RCW Does Not Provide an Exclusive Remedy

To the extent that chapter 7.60 RCW's language is not explicit, it is worth noting a relevant policy consideration. One of the advantages of a deed of trust is that it offers "'efficient and inexpensive'" nonjudicial foreclosure. *Schroeder*, 177 Wn.2d at 104 (quoting *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Thus, requiring lenders to wade through the judicial receivership process in all cases— regardless of the facts and circumstances—is illogical. Overall, both policy and the plain text of the statute support finding that it does not provide an exclusive remedy to lenders. Thus, we must answer this question in the negative.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

## CONCLUSION

We answer the first certified question in the negative. Washington law prohibits lenders from taking possession of property prior to foreclosure. These entry provisions enable the lender to take possession after default, and the lender's action here constitutes taking possession. Therefore, the entry provisions are in direct conflict with state law and are unenforceable.

As to the second question, we also answer it in the negative. The text of the receivership statutes, the legislative intent behind them, and public policy considerations compel us to find that chapter 7.60 RCW is not the exclusive remedy for lenders to gain access to a borrower's property.

.

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

_____

WE CONCUR:

_____

_____

Fairhurst, J.

_____

_____

Wiggins, J.

González, J.

_____

_____

Yu, J.

21

*Jordan v. Nationstar Mortgage, LLC*

No. 92081-8

STEPHENS, J. (dissenting)—I respectfully dissent because the majority erroneously equates the entry provisions at issue with actual possession. Months after Laura Jordan defaulted on her loan, Nationstar Mortgage LLC inspected Jordan's property and determined that it was vacant. Pursuant to the deed of trust's entry provisions, Nationstar secured the home by changing the lock to the front door and posted instructions on how Jordan could enter the home if she returned. This practice is not inconsistent with Washington's lien theory of mortgages and RCW 7.28.230(1). Accordingly, the first certified question should be answered in the affirmative.

"Washington courts have hesitated to 'invoke public policy to limit or avoid express contract terms absent legislative action.'" *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 753, 845 P.2d 334 (1993) (quoting *State Farm*

*Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984)). It is undisputed that the deed of trust's entry provisions were contractually agreed to and authorized Nationstar to change the locks on Jordan's home after default. And as the majority correctly notes, Washington's legislature has not "specifically invalidate[d] such contrary agreements in its codification of lien theory prohibiting the lender from taking possession of property before foreclosure." Majority at 10.

The majority nevertheless finds the entry provisions contravene Washington's rule against lenders taking preforeclosure possession of borrowers' property. The majority does so by describing the entry provisions as authorizing the lender to take "possession." *Id.* at 8, 12. But the certified question asks not whether lenders can take "possession" of property before foreclosure. Instead, it asks whether the lender can "enter, maintain, and secure the encumbered property" before foreclosure. Order Certifying Questions to Wash. Supreme Court, *Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR at 9 (E. Wash. Aug. 10, 2015). Absent legislation stating otherwise, the entry provisions at issue are not inconsistent with Washington's lien theory of mortgages and RCW 7.28.230(1).

The majority cites inapposite authority to equate the entry provisions with actual possession. At the outset, the majority's reliance on the *Restatement* is misplaced. RESTATEMENT (THIRD) OF PROP: MORTGAGES § 4.1 (AM. LAW. INST.

-2-

*Jordan v. Nationstar Mortgage, LLC*, 92081-8 (Stephens, J. Dissenting)

1997). The *Restatement* does not contemplate entry provisions, like those considered here, but rather a lender taking possession. The *Restatement* merely reiterates the general rule against accelerated preforeclosure possession of property. In illustrative applications of this rule, the *Restatement* examines instances where the mortgagee has "file[d] an action to obtain possession of [the property]." RESTATEMENT § 4.1 cmt. b, illus. 1-3. Here, however, Nationstar has not filed an action to obtain possession of Jordan's property. Instead, after Jordan defaulted on her loan, Nationstar took contractually authorized steps to secure the abandoned property— and it posted instructions on how Jordan could access the property, consistent with her continued right of possession.

Neither of the two Court of Appeals decisions cited by the majority support equating the entry provisions to possession. *Aldrich v. Olson* does not even interpret "possession" in RCW 7.28.230(1). 12 Wn. App. 665, 531 P.2d 825 (1975). And *Coleman v. Hoffman* merely clarifies the difference between the right to possession (applicable to foreclosure actions) and actual possession (applicable to premises liability matters): "Although RCW 7.28.230 effectively precludes a mortgagee from obtaining possession of property to the mortgagor's exclusion, the statute does not bear on the question of whether a mortgagee actually possess the property. Actual possession, not a right to possession, is the critical inquiry in premises liability

-3-

cases." 115 Wn. App. 853, 863-64, 64 P.2d 65 (2003). But unlike the landlords in *Aldrich* and *Coleman*, Nationstar never possessed the property to Jordan's exclusion. Rather, Nationstar provided Jordan with instructions on how to enter her home if she returned. At no point did Nationstar ever object to Jordan's continued right to possession before foreclosure.

Finally, even if we regarded the entry provisions as interfering with Jordan's right to possession, Nationstar was nevertheless justified in securing Jordan's abandoned property. The *Restatement* recognizes three exceptions to the general rule that mortgagees cannot obtain possession of the mortgagor's property before foreclosure: (1) mortgagor consent, (2) mortgagee's possession as the result of peaceful entry in good faith after purchasing the property at a void or voidable foreclosure sale, and (3) mortgagor abandonment. RESTATEMENT § 4.1 cmt. c. Here, the evidence supported Nationstar securing Jordan's home under the mortgagor abandonment exception. Months after Jordan defaulted on her loan, Nationstar inspected Jordan's property and determined that it was vacant. Nationstar then changed the locks, which it was allowed to do under the entry provisions in order to secure the property. *Cf. PNC Bank, NA v. Van Hoornaar*, 44 F. Supp. 3d 846, 856-57 (E.D. Wis. 2014) (dismissing trespass claim against lender for changing a homeowner's locks upon default because the mortgage agreement authorizing the

-4-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

lender to secure the premises upon default or abandonment created an implied consent to entry); *see also Tennant v. Chase Home Fin., LLC*, 187 So. 3d 1172, 1181-82 (Ala. Civ. App. 2015). Moreover, public policy considerations support Nationstar securing Jordan's abandoned property: "Not only is it important to protect the [property] against the elements and vandalism, but society is benefited by [the property's] productive use." RESTATEMENT § 4.1 cmt. c.

Pursuant to entry agreements like the one mutually agreed on by Nationstar and Jordan, a lender may "enter, maintain, and secure" seemingly abandoned property before foreclosure without taking "possession" of it. Because the first certified question should be answered in the affirmative, I dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Jordan v. Nationstar Mortgage, LLC*, 92081-8 (Stephens, J. Dissenting)

Stephens, J.

Gordon McCloud, J.

Madsen, C.J.