**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILED**
**NOVEMBER 8, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SALEH ELGIADI, on behalf of himself and all others similarly situated, | ) ) ) | No. 38784-4-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| WASHINGTON STATE UNIVERSITY SPOKANE, an agency of the State of Washington and THE STATE OF WASHINGTON, | ) ) ) ) ) ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Settling parties in employment discrimination cases sometimes include a no-rehire provision in their settlement agreements. In the provision, the former employee agrees not to seek or accept employment from the former employer. The question presented here is whether a former employee who settles a claim of unlawful discrimination may effectively waive their contingent right to be rehired. We conclude they may and affirm the trial court's summary judgment rulings.

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

## FACTS

Saleh Elgiadi worked for Washington State University (WSU) for 29 years. During this time, he worked in information technology, eventually becoming the chief information technology officer for WSU-Spokane's information technologies systems (ITS) department. Following a wage dispute, WSU terminated his employment.

Mr. Elgiadi brought suit against WSU and the State of Washington (collectively the State) alleging breach of contract, promissory estoppel, wrongful termination in violation of public policy, negligent misrepresentation, intentional misrepresentation, intentional interference with a business expectancy, retaliation, and age discrimination. His request for relief included lost wages, benefits, back wages, front pay, double damages, prejudgment interest, and attorney fees; he did not ask to be reinstated. His claim for age discrimination was dismissed on summary judgment.[1]

In early 2020, Mr. Elgiadi and the State entered into a settlement agreement. The agreement required Mr. Elgiadi to release the State from all claims arising out of his former employment. In exchange, the State agreed to pay Mr. Elgiadi $295,000. The

---

[1] One of the parties highlighted portions of the letter decision they wanted to emphasize. Highlighting text results in our copy of that text appearing redacted. We encourage parties to underline text they wish to stress so we can read it. Ultimately, and as explained below, the summary dismissal of Mr. Elgiadi's discrimination claim is irrelevant.

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

agreement contained the following provision, which provides only one limitation on Mr.

Elgiadi's future employment:

> 3.      As a condition of this settlement, *State of Washington requires that Plaintiff agree he will neither seek nor accept employment with WASHINGTON STATE UNIVERSITY-SPOKANE, at any time in the future. . . .* The parties agree this required limitation applies only to employment with WSU-Spokane and that it does not prevent Plaintiff for [sic] working for an independent contractor providing services, consulting, acting as a vendor or other contractors providing materials, supplies or services to WSU-Spokane.

Clerk's Papers (CP) at 30 (emphasis added).

Seven months later, Mr. Elgiadi brought suit against the State. His suit sought

class action status for all former State employees whose discrimination claim settlements

included a no-rehire provision.

Pertinent to the issues on appeal, Mr. Elgiadi's complaint asserts that the above-

italicized provision—referred to hereafter as the "no-rehire provision"—violates the

public policy behind the Washington Law Against Discrimination (WLAD), chapter

49.60 RCW, violates WLAD's antiretaliation statute (RCW 49.60.210), and is an

unlawful restraint of trade (RCW 49.62.020). The State denied that the provision violated

those laws and affirmatively asserted defenses—including the defenses of waiver, accord

and satisfaction, equitable estoppel, and judicial estoppel.

3

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

Prior to seeking class certification, Mr. Elgiadi filed a motion for partial summary judgment requesting the trial court declare the no-rehire provision void and unenforceable. The State filed a cross motion for summary judgment, requesting dismissal of Mr. Elgiadi's claims. The trial court denied the former and granted the latter. Mr. Elgiadi timely appealed the trial court's rulings.

LAW AND ANALYSIS

A.      *Standard of review*

We review a trial court's summary judgment ruling de novo, taking all facts and inferences in the light most favorable to the nonmoving party. *NOVA Contracting, Inc. v. City of Olympia*, 191 Wn.2d 854, 864, 426 P.3d 685 (2018).

B.      *Strong public policy encourages settlements*

Settlement agreements are governed by the legal principles of contract law. *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383 (1983). Mr. Elgiadi does not dispute that he voluntarily entered into the settlement agreement. Instead, he seeks to have the no-rehire provision declared void and unenforceable, to have it struck from the agreement, and to retain the $295,000 paid to him by the State.

Through compromise and settlement, parties agree to dismiss disputed claims by making mutual concessions. *Harding v. Will*, 81 Wn.2d 132, 138, 500 P.2d 91 (1972);

4

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

15B AM. JUR. 2D COMPROMISE AND SETTLEMENT AGREEMENTS § 1 (2021).  By its

nature, settlement does not secure a party the same vindication that might be won through

litigation.  Instead:

> Each party generally accepts something less than that to which he believes
> he is entitled based on a decision that the compromise is more advantageous
> to him than the sum of the risks and benefits involved in pursuing the claim.

*Strozier v. Gen. Motors Corp.*, 635 F.2d 424, 425 (5th Cir. 1981).  The law favors

settlements and the finality they afford.  *Haller v. Wallis*, 89 Wn.2d 539, 544, 573 P.2d

1302 (1978).  Washington's jurisprudence recognizes a strong public policy encouraging

settlements.  *Am. Safety Cas. Ins. Co. v. City of Olympia*, 162 Wn.2d 762, 772, 174 P.3d

54 (2007); *City of Seattle v. Blume*, 134 Wn.2d 243, 258, 947 P.2d 223 (1997); *Seafirst

Ctr. Ltd. P'ship v. Erickson*, 127 Wn.2d 355, 366, 898 P.2d 299 (1995).

Generally, a defendant chooses to settle in order to avoid potential liability and

further attorney fees.  These purposes would be thwarted if the settling plaintiff could

receive a substantial settlement and then sue the defendant again and cause it to incur

further potential liability and attorney fees.  Here, the State sought to ensure this did not

happen by including the no-rehire provision.  Without it, Mr. Elgiadi could apply for

rehire, be denied employment even for nonretaliatory reasons, and the State would face

potential liability and further attorney fees.

5

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

     C.       *The doctrine of severability*

Before we address Mr. Elgiadi's arguments, we discuss what his remedy would be if he succeeds in having the no-rehire provision declared void and unenforceable.

It is uncontested that the no-rehire provision was material in obtaining the State's assent to pay Mr. Elgiadi $295,000. The paragraph containing the no-rehire provision provides:

> The parties understand and agree that [the State] has required this paragraph as a material provision of this Agreement and that any breach of this paragraph shall be a material breach of this Agreement and that the State would be irreparably harmed by violation of this provision.

CP at 30.

After oral argument, we asked the parties for supplemental briefing discussing what the proper remedy would be were we to invalidate the no-rehire provision. Mr. Elgiadi argues a provision in a settlement agreement that violates public policy can be "lined out" in accordance with the "blue pencil test" and the remainder of the agreement enforced. Appellant's Suppl. Br. at 2. The State argues the entire agreement fails if the provision declared unenforceable was objectively material to the parties' agreement. Resp't's Suppl. Br. at 2-10. We agree with the State.

6

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

When a court declares a provision in an agreement unenforceable, a question arises whether the provision is severable from the contract or whether the entire contract fails. Years ago, our Supreme Court rejected the "blue pencil test" of contract severability:

> The enforcement of . . . a contract does not depend upon mechanical divisibility, meaning that offending portions of the covenant can be lined out and still leave the remainder grammatically meaningful and thus enforceable. This is the so-called "blue pencil test." The better test is whether partial enforcement is possible without injury to the public and without injustice to the parties.

*Wood v. May*, 73 Wn.2d 307, 313, 438 P.2d 587 (1968).

A more recent analysis of the doctrine of severability occurred in *State v. Chambers*, 176 Wn.2d 573, 580-83, 293 P.3d 1185 (2013), where the court applied contract principles to a criminal plea agreement. In *Chambers*, the defendant committed a series of crimes in February and May 1999. *Id*. at 577-79. He pleaded guilty to those crimes. *Id*. at 577-78. Prior to being sentenced, he committed additional crimes in November 1999. *Id*. at 578. As part of a global plea deal, the defendant agreed to a 240-month sentence for his November crimes to be served consecutive to the yet-to-be imposed sentence for the earlier crimes. *Id*. at 578-79. The defendant was sentenced for the February and May crimes, and later was sentenced for the November crimes. *Id*. at 579-80.

7

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

Years later, a court permitted the defendant to withdraw his guilty plea to the February crimes. *Id*. at 580. The withdrawal of that plea resulted in a lower offender score than that used in the defendant's sentence for the November crimes. *Id*. Because the offender score determines the length of a sentence, the defendant asked to be resentenced for the November crimes. *Id*. The trial court refused. *Id*. We reversed and our Supreme Court accepted the State's petition for review. *Id*.

In *Chambers*, our high court reviewed the history of the plea deal for the November crimes. *Id*. at 581-84. It noted that the 240-month consecutive sentence for the November crimes was a global plea deal in which the State agreed to allow the defendant to seek the low end of a standard range sentence for one of the February crimes. *Id*. at 581. The *Chambers* court applied contract law in deciding whether the defendant's sentence for the November crimes was severable from the sentence for the February 1999 crimes: "Whether a contract is divisible or indivisible is dependent upon the intent of the parties. We look only to objective manifestations of intent, not unexpressed subjective intent." *Id.* at 580-81 (citation omitted). The court concluded that the 240-month consecutive sentence was a global agreement, not divisible from the withdrawn guilty plea for the February crimes, and denied the defendant's request that he be resentenced for his November crimes. *Id*. at 583.

8

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

Here, the objective manifestations of the parties establish that settlement was dependent upon the no-hire provision. The paragraph containing that provision states that the State "required this paragraph as a material provision," and its breach would "irreparably harm[ ]" the State. CP at 30. Mr. Elgiadi, with the benefit of counsel, signed the agreement. In return, the State paid him $295,000. Because the State's assent for paying Mr. Elgiadi $295,000 was dependent on him accepting the no-rehire provision, the provision is not severable. We conclude, if Mr. Elgiadi succeeds in invalidating the no-rehire provision, he will be required to return the $295,000 to the State, and the claims in the initial action will then be reinstated.

D. *The no-rehire provision and State policy*

We now turn to whether the no-rehire provision violates public policy. Mr. Elgiadi raises three arguments. However, the first two—the no-rehire provision violates both WLAD's public policy and WLAD's antiretaliation statute—are substantially the same argument. They both rely upon WLAD's antiretaliation statute as construed by *Zhu v. North Central Educational Service District-ESD 171*, 189 Wn.2d 607, 404 P.3d 504 (2017). We address this argument first.

9

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

> 1. *Public policy does not require invalidating the no-rehire provision and rescinding the settlement agreement*

>> a. The antiretaliation statute prohibits an employer from refusing to hire an employee because they opposed unlawful discrimination

RCW 49.60.210(1) prohibits an employer from retaliating against any person for opposing any practice forbidden by the WLAD. In *Zhu*, our high court was asked to clarify the scope of this subsection.

Jin Zhu sued the Waterville School District for subjecting him to racially motivated disparate treatment, a hostile work environment, and retaliation. *Zhu*, 189 Wn.2d at 610. After the parties settled, Zhu resigned from the Waterville School District and sought a position with the North Central Educational Service District-ESD 171. *Id.* ESD 171 did not hire Zhu. *Id.* at 611. Zhu filed a claim against ESD 171, asserting the district refused to hire him in retaliation for his prior lawsuit against Waterville, thereby violating WLAD's antiretaliation statute. *Id.* A jury sided with Zhu, and ESD 171 moved for a new trial on the basis that the antiretaliation statute does not prohibit retaliatory discrimination against a job applicant by prospective employers. *Id.*

The federal court certified the question of law to the Washington Supreme Court. Specifically, the federal court asked:

10

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

> "Does [WLAD's antiretaliation statute] create a cause of action for job applicants who claim a prospective employer refused to hire them in retaliation for prior opposition to discrimination against a different employer?"

*Id.* Our Supreme Court answered, "yes." *Id.* at 613.

In discussing the breadth of the statute, the court noted, "[l]ike all antiretaliation statutes, RCW 49.60.210(1)'s primary purpose is '[m]aintaining unfettered access to statutory remedial mechanisms.'" *Id.* at 613 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)). The court further noted, "[w]hen interpreting WLAD, we are particularly mindful that 'a plaintiff bringing a discrimination case in Washington assumes the role of a private attorney general, vindicating a policy of the highest priority.'" *Id.* at 614 (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97, 109, 922 P.2d 43 (1996)). "To further this important purpose, both the legislature and Washington courts require that even in a plain language analysis, WLAD's provisions must be given 'liberal construction.'" *Id.* (citing RCW 49.60.020).

After finding the prima facie elements of unlawful retaliation met, the *Zhu* court again emphasized the breadth of RCW 49.60.210(1): "[I]t would make little sense to hold that the legislature intentionally undercut its own purposes in enacting WLAD by adopting an antiretaliation provision that allows employers to compile an unofficial 'do

11

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

not hire' list of individuals who have previously opposed discrimination against themselves and others." *Id.* at 623.

Given *Zhu*, we readily conclude that the antiretaliation statute prevents a former employer from refusing to hire a former employee because they opposed unlawful discrimination. The State does not dispute this. Rather, the State distinguished *Zhu*, relying on the fact that Mr. Elgiadi—represented by counsel—had voluntarily waived his right to be rehired by WSU-Spokane.[2] This raises the related question of whether public policy forbids such a waiver.

> b. Public policy does not forbid a plaintiff, who settles a claim of unlawful discrimination, from waiving a contingent right, such as the right to be rehired

In *Helgeson v. City of Marysville*, 75 Wn. App. 174, 881 P.2d 1042 (1994), the court addressed whether a former employee could waive a statutory right in resolving a disputed claim. Construing a prior Supreme Court opinion, the *Helgeson* court held that the employee could, provided the statutory right was contingent rather than vested.

---

[2] The State also notes that Mr. Elgiadi's discrimination claim had been dismissed on summary judgment. The dismissal of this claim is irrelevant. Unlawful retaliation may be proved regardless of the success of the underlying discrimination claim. *See Ellis v. City of Seattle*, 142 Wn.2d 450, 461, 13 P.3d 1065 (2000) ("[A] reasonable belief by the employee, rather than an actual unlawful employment practice, is all that need be proved to establish a retaliation claim.") (citing *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994))).

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

*Id.* at 182-85. A closer review of *Helgeson* will elucidate this rule.

Fire Chief Melvin Helgeson worked for the city of Marysville before being discharged for cause. *Id.* at 176. Two days later, he applied for Law Enforcement Officers' and Fire Fighter's Retirement System (LEOFF) I duty disability retirement benefits pursuant to chapter 41.26 RCW. *Id.* His application was based on injuries he sustained while working as a firefighter. *Id.* The county disability board granted Helgeson a disability retirement allowance and Marysville appealed to the LEOFF board and then to superior court. *Id.* The parties entered into a settlement agreement whereby Marysville dropped its appeal of his disability retirement in exchange for Helgeson agreeing to waive payment of any medical benefits by Marysville under RCW 41.26.150. *Id.* at 177. A few years later, Helgeson's health deteriorated and he brought suit to have his waiver of medical benefits declared void in violation of public policy. *Id.* at 180. His argument relied on *Vallet v. City of Seattle*, 77 Wn.2d 12, 459 P.2d 407 (1969).

In *Vallet*, the city of Seattle required Emile Vallet, a retiring police officer, to make an election whether to retire under the pension law in effect when he was hired or the pension law in effect when he retired. *Id.* at 14-15. The *Vallet* court rejected Seattle's argument that the election was an enforceable waiver. *Id.* at 15-16. Rather, it held that a

13

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

civil servant must be paid the amount prescribed by law and any agreement to accept less is contrary to public policy and is void. *Id.* at 15.

In construing *Vallet*, the *Helgeson* court distinguished between vested rights and contingent rights. *Helgeson*, 75 Wn. App. at 181-82. It reasoned that because Vallet had a vested right to a statutorily defined retirement amount, he could not waive it. *Id.* at 182. Distinguishing *Vallet* from the case before it, the *Helgeson* court reasoned that Helgeson did not have a vested right to payment of medical services when he signed the settlement agreement. *Id.* at 183. For this reason, the *Helgeson* court concluded that enforcement of Helgeson's waiver of those rights did not violate public policy. *Id.* at 183-84.

Here, Mr. Elgiadi did not work for WSU-Spokane when he signed the settlement agreement. He had no vested right to be rehired. Consistent with *Helgeson*, we conclude that Mr. Elgiadi's waiver of his right to be rehired does not violate public policy.

*Zhu* does not require a different conclusion. There, the court emphasized that "'a plaintiff bringing a discrimination case in Washington assumes the role of a private attorney general, vindicating a policy of the highest priority.'" *Zhu*, 189 Wn.2d at 614 (quoting *Marquis*, 130 Wn.2d at 109). Toward achieving this policy, the court emphasized that a "reasonable employee" must not be dissuaded from opposing

14

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

discriminatory practices by fear of being blacklisted by a prospective employer. *Id.* at

619.

In *Zhu*, had the court ruled differently, employees opposing unlawful

discrimination could be blacklisted by any prospective employers. Such a result would

cause employees to be dissuaded from opposing unlawful discrimination, thus frustrating

an important policy behind the WLAD.

The opposite is true here. Mr. Elgiadi is free to work for any employer except one

branch campus of WSU.[3] This very narrow prohibition would not cause a reasonable

employee to be dissuaded from opposing unlawful discrimination. This is especially true

here, where Mr. Elgiadi in his initial lawsuit did not seek to be rehired. Because the no-

rehire provision is narrow, *Zhu* does not require us to invalidate it.

> 2.     *The no-rehire provision does not violate RCW 49.62.020*

Mr. Elgiadi argues the no-rehire provision violates RCW 49.62.020. We disagree.

RCW 49.62.020 governs to what extent noncompetition covenants are void and

unenforceable. With limited exceptions, a noncompetition covenant includes every

---

[3] The dissent argues that one cannot waive a future claim of discrimination. But this is not what Mr. Elgiadi waived. He waived his right to reapply or be rehired by one branch campus of a public university. This "right" was less important to Mr. Elgiadi than settling his claims for substantial compensation, as evidenced by his knowing, intelligent, and voluntary agreement to that condition in the settlement agreement.

No. 38784-4-III
*Elgiadi v. Wash. State Univ.*

written agreement "by which an employee or independent contractor is prohibited or restrained from engaging in a lawful profession, trade, or business of any kind." RCW 49.62.010(4).

Here, Mr. Elgiadi was not an employee or independent contractor when he agreed to the no-rehire provision. He was a former employee. Thus, the provision is not a noncompetition covenant, and RCW 49.62.020 is not implicated.

We affirm the trial court's summary dismissal of Mr. Elgiadi's claims.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Siddoway, C.J.

16

No. 38784-4-III

FEARING, J. (dissenting) — In settlement of an employment discrimination suit that Saleh Elgiadi brought against the Spokane branch campus of Washington State University (WSU), WSU paid Elgiadi the sum of $295,000.  In turn, Elgiadi signed a three-page "Settlement and Release Agreement" (settlement agreement).  Paragraph 3 of the settlement agreement reads:

> As a condition of this settlement, State of Washington requires that Plaintiff agree he will neither seek nor accept employment with WASHINGTON STATE UNIVERSITY-SPOKANE, *at any time in the future*.  The parties understand and agree that The State of Washington has required this paragraph as a material provision of this Agreement and that any breach of this paragraph shall be a material breach of this Agreement and that the State would be irreparably harmed by violation of this provision.  If for any reason Plaintiff is offered employment with the Washington State University-Spokane, the State of Washington requires that this agreement may be used as the sole basis to rescind any offer of employment or to terminate employment.  Because the State of Washington is requiring this paragraph as a condition of Settlement, Plaintiff agrees.  The parties agree this required limitation applies only to employment with WSU-Spokane and that it does not prevent Plaintiff for [sic] working for an independent contractor providing services, consulting, acting as a vendor or other contractors providing materials, supplies or services to WSU-Spokane.

Clerk's Papers (CP) at 30 (emphasis added).  I refer to paragraph 3 as the no-reapply clause.  Elgiadi and WSU provide this court no evidence of any communications between the parties that led to the inclusion of the no-reapply clause in the settlement agreement.

This appeal raises six related questions.  First, is the no-reapply clause void as against public policy?  Second, did Saleh Elgiadi waive the right to challenge the no-reapply clause?  Third, is Elgiadi equitably estopped from challenging the no-reapply

No. 38784-4-III
*Elgiadi v. Washington State University*

clause? Fourth, is Elgiadi judicially estopped from challenging the no-reapply

clause? Fifth, did the settlement Agreement work an accord and satisfaction? Sixth,

if the clause is void and if Elgiadi neither waived nor is estopped from denying the

validity of the clause, should this court void the entire settlement Agreement or only

strike the clause from the agreement? I answer the questions as follows: (1) yes, based

on RCW 49.60.210(1), (2) no, (3) no, (4) no, (5) no, and (6) remand to the superior court

for further proceedings on whether to strike the clause or void the agreement. Therefore,

I dissent from the majority's ruling.

RCW 49.60.210(1)

The letter and spirit of RCW 49.60.210 compel the negation of a provision in an

agreement settling an employment discrimination claim, which provision precludes the

employee from seeking further employment with the employer. By insisting on the

employee agreeing to a no-reapply clause, the employer engages in retaliation for

asserting the original discrimination claim. The settling employer treats the employee

differently because of his or her having asserted the discrimination claim against the

employer.

RCW 49.60.210(1) declares:

> It is an unfair practice for *any employer*, employment agency, labor
> union, or other person to discharge, expel, or otherwise *discriminate* against
> *any person because he or she has opposed any practices forbidden* by this

2

No. 38784-4-III
*Elgiadi v. Washington State University*

> chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

(Emphasis added.) In interpreting statutes, a court seeks to fulfill the legislature's intent. *State v. Haggard*, 195 Wn.2d 544, 547-48, 461 P.3d 1159 (2020). The clearest indication of the legislature's intent is the plain meaning of the statutory language. *State v. Conaway*, 199 Wn.2d 742, 749, 512 P.3d 526 (2022).

RCW 49.60.210(1) prohibits retaliation against "any person" by "any employer." The statute contains no qualifier for former employees. The statute admits no exception for employers who fired an employee or employers who reached a settlement agreement with current or former employees. Saleh Elgiadi is "any person" under the statute. WSU is "any employer" under the statute. I need not engage in any exegesis or review any case law to conclude that the no-reapply clause in Elgiadi's settlement agreement violates RCW 49.60.210(1). I do so anyway.

Like all antiretaliation statutes, RCW 49.60.210(l) primarily seeks to maintain unfettered access to statutory remedial mechanisms for employment discrimination. *Zhu v. North Central Educational Service District-ESD 171*, 189 Wn.2d 607, 614, 404 P.3d 504 (2017). People are less likely to oppose discrimination by bringing claims or testifying if the law does not extend them protection against retaliation. *Allison v. Housing Authority*, 118 Wn.2d 79, 94, 821 P.2d 34 (1991). Thus, in order to encourage people to oppose discrimination, we afford RCW 49.60.210, the antiretaliation statute,

3

No. 38784-4-III
*Elgiadi v. Washington State University*

liberal construction. RCW 49.60.020; *Zhu v. North Central Educational Service District-ESD 171*, 189 Wn.2d 607, 614 (2017). If anything, antiretaliation provisions should be interpreted more broadly than provisions prohibiting discrimination based on protected characteristics in order to implement the former's purpose. *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 61-67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

*Zhu v. North Central Educational Service District-ESD 171*, 189 Wn.2d 607, 609 (2017) controls. The Supreme Court addressed the question: does RCW 49.60.210(1) create a cause of action for job applicants who claim a prospective employer refused to hire him or her in retaliation for earlier opposition to discrimination against a different employer? The court answered "yes."

Jin Zhu sued the Waterville School District for a hostile work atmosphere based on his Chinese background. The school district and Zhu resolved the suit and Zhu resigned from his employment with the district. Three months later, Zhu applied for employment with the North Central Educational Service District, which maintained a relationship with the Waterville School District. Officials of the service district knew of Zhu's lawsuit against the school district. The education service district hired someone else, who Zhu claimed lacked his qualifications for the position. Zhu then sued the service district. He alleged the district declined his application because of his earlier claim against the school district.

No. 38784-4-III
*Elgiadi v. Washington State University*

The Washington Supreme Court, in *Zhu v. North Central Educational Service District-ESD 171*, concluded that the unmistakable language in RCW 49.60.210 extended to all employers, not just the employee's former or current employer. The court worried about an unofficial blacklist if prospective employers declined to hire those who filed discrimination claims against previous employers. A reasonable employee might be dissuaded from opposing discriminatory practices for fear of being placed on this blacklist.

The Washington Supreme Court's reasoning, in *Zhu v. North Central Educational Service District-ESD 171*, extends to the former employer blacklisting the employee. The antiretaliation policy in Washington State suffers if an employer, through the process of settling a lawsuit or any claim, may demand that the employee resign from employment or not to apply for work again. An employee may value employment with the employer, despite being the subject of or observing discriminatory practices or treatment. This employee will shun ridding discrimination from the employment setting in order to retain employment.

An enlightening opinion is *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) decided under 42 U.S.C. § 2000e-3(a), the federal analog to RCW 49.60.210(1). The federal statute bars an employer from "discriminat[ion] against any of his employees or applicants for employment" who have either availed themselves of discrimination protections or assisted others in so doing. The case posed

5

No. 38784-4-III
*Elgiadi v. Washington State University*

the question of whether the term "employees," as used in the statute, includes former employees, such that Charles Robinson might bring suit against his former employer for postemployment actions allegedly taken in retaliation for his having filed a charge with the Equal Employment Opportunity Commission (EEOC). The employer argued that the statute did not protect former employees. After Robinson filed the charge with the EEOC, he left employment and applied to another employer. The prospective employer contacted Shell Oil Company, who supplied a negative reference for Robinson. Robinson claimed that Shell gave the negative recommendation because of his having filed the discrimination complaint.

The Supreme Court, in *Robinson v. Shell Oil Co.*, held that the term "employee" in the federal statute extended to former employees for many reasons. First, the statute maintained no temporal qualifier. The statute could have expressly excluded the phrase "former employees" or included the phrase "current employees." Washington's statute, RCW 49.60.210(1), goes further than the federal statute and protects "any person." Second, allowing a former employer to discriminate or retaliate against a past employee would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC.

Public Policy

Public policy renders a contract term unenforceable when the public policy outweighs the interest in enforcing the term. *LK Operating, LLC v. Collection Group,*

6

No. 38784-4-III
*Elgiadi v. Washington State University*

*LLC*, 181 Wn.2d 48, 85, 331 P.3d 1147 (2014). A contract contrary to the terms of an express legislative enactment is illegal and unenforceable. *Jordan v. Nationstar Mortgage, LLC*, 185 Wn.2d 876, 883, 374 P.3d 1195 (2016); *State v. Northwest Magnesite Co.*, 28 Wn.2d 1, 26, 182 P.2d 643 (1947). Parties to a contract cannot avoid a statute through the inclusion of a contrary contractual provision. *Failor's Pharmacy v. Department of Social & Health Services*, 125 Wn.2d 488, 499, 886 P.2d 147 (1994); *Nye v. University of Washington*, 163 Wn. App. 875, 886, 260 P.3d 1000 (2011). While Washington law recognizes an overarching freedom to contract, provisions are unenforceable where they are prohibited by statute. *State Farm General Insurance Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984).

In *Jordan v. Nationstar Mortgage, LLC*, 185 Wn.2d 876 (2016), the state high court declared void a provision in a deed of trust that allowed the lender to change locks on the residence's front door if the borrower defaulted. Such a provision violated a Washington statute.

On appeal, WSU promotes the public policy of enforcing settlement agreements. When doing so, the university ignores the public policy behind antiretaliation statutes. Washington maintains a long and proud history of being a pioneer in the protection of employee rights. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 300, 996 P.2d 582 (2000); *Reeves v. Mason County*, 22 Wn. App. 2d 99, 118, 509 P.3d 859 (2022). In bringing a discrimination case in Washington, the employee assumes the role of a private

7

No. 38784-4-III
*Elgiadi v. Washington State University*

attorney general, vindicating a policy of the "highest priority." *Zhu v. North Central Educational Service District-ESD 171*, 189 Wn.2d 607, 614-15 (2017); *Marquis v. City of Spokane*, 130 Wn.2d 97, 109, 922 P.2d 43 (1996). No court has inferred, let alone ruled, that enforcing a settlement agreement fulfills a policy of a higher, let alone, the highest priority. The policy against retaliation must prevail over a policy favoring settlements.

WSU argues that the purposes behind enforcing settlements would be thwarted if the settling plaintiff could receive a substantial settlement and then sue the defendant again and cause it to incur further potential liability and attorney fees. Of course, if the employee received a substantial settlement, the employer likely engaged in discrimination, if not some form of egregious discrimination. This court should not shield such an employer from further claims of discrimination.

Although small employers face a dissimilar situation, if WSU disagreed with Saleh Elgiadi as to his charges of discrimination, WSU had the right to challenge the allegations in court. The State of Washington maintains a team of assistant attorneys general for this purpose.

WSU's contention impliedly labels the employee a troublemaker for having brought a discrimination claim. WSU impliedly wishes to send its current or former troublemaker to another employer, who will then face claims of discrimination and retaliation instead of WSU facing the claims. But I should not assume that the employee

8

No. 38784-4-III
*Elgiadi v. Washington State University*

is a troublemaker, as opposed to a person seeking to rid Washington workplaces of discriminatory practices and environments. I also question why a new employer should bear the brunt of the troublemaker when the first employer's work conditions initially led to complaints.

WSU argues that the no-reapply clause seeks to protect Saleh Elgiadi from returning to a conflicted workgroup. The argument implies that WSU paternalistically seeks to benefit Elgiadi, not itself, from a difficult work environment. WSU should afford Elgiadi the opportunity to make this choice on his own. I recognize the potential for a cold, if not hostile, environment resulting from the return to the workplace of an employee who claimed racial discrimination. Still, this environment arises when the employee files a claim without having been fired, and the employer possesses no right to fire the employee for creating a mephitic milieu. Instead, the employer violates RCW 49.60.210(1) by firing the employee despite the employee purportedly creating a poisonous atmosphere.

The Washington law against discrimination provides that all remedies authorized by the United States Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., are available to plaintiffs in actions under the law against discrimination. RCW 49.60.030(2). Title VII provides for the remedy of reinstatement where appropriate. 42 U.S.C. § 2000e-5(g). We liberally construe the remedial provision of the law against discrimination in order to encourage private enforcement. *Blair v. Washington State University*, 108 Wn.2d 558,

9

No. 38784-4-III
*Elgiadi v. Washington State University*

570, 740 P.2d 1379 (1987). The legislature, therefore, does not consider returning the complainant to his or her workplace a crisis to be avoided.

Of limited application is *Golden v. California Emergency Physicians Medical Group*, 782 F.3d 1083 (9th Cir. 2015). The Ninth Circuit answered the question: whether a provision of a settlement agreement between Donald Golden and his former employer, the California Emergency Physicians Medical Group (CEP), placed a "restraint of a substantial character" on Dr. Golden's medical practice. *Golden v. California Emergency Physicians Medical Group*, 782 F.3d at 1091. The court concluded that it did and thus violated California law. Golden sued CEP, claiming that the employer fired him because of his race. During a settlement conference, the parties orally agreed to settle the case. When the settlement agreement was later reduced to writing, however, Golden refused to sign it. He claimed that one of its provisions breached California's statutory prohibition on contracts that restrain one from engaging in a lawful profession, trade, or business. The paragraph precluded Golden from working at any facility owned by CEP or with whom CEP contracted. The court discussed extensively whether the contract provision violated the California statute. More importantly, after concluding that the provision contravened California law, the court held that the employer could not insert a provision in the settlement agreement that precluded it from rehiring by the settling employee. The court did not express concern about Golden working in an environment of hurt feelings because of his earlier allegations of racial discrimination.

10

No. 38784-4-III
*Elgiadi v. Washington State University*

WSU worries that a ruling favoring Saleh Elgiadi could reduce, if not end, the settling of employment discrimination claims. I question this assertion. Nevertheless, this court may not ignore the unmistakable terms of a statute, which holds highest priority, in order to facilitate settlement of lawsuits.

WSU worries that any ruling favoring Saleh Elgiadi would also outlaw the long-accepted practice of negotiating for no future employment terms. Of course, my dissent would only preclude such a clause in the context of discrimination claims. Regardless, WSU cites no decision that stands for the proposition that long-accepted practices trump statutes or public policy abhorring racial discrimination and retaliation for filing discrimination claims. If courts deemed their role limited to preserving long-accepted practices, we might still live under feudal England rules.

WSU mentions that the no-reapply clause in Saleh Elgiadi's settlement agreement only precluded employment from the Spokane campus of Washington State University. Nevertheless, RCW 49.60.210(1) admits no exception to retaliation for a limited geographic scope.

WSU relies on *Lehrer v. Department of Social & Health Services*, 101 Wn. App. 509, 5 P.3d 722, *review denied*, 142 Wn.2d 1014, 16 P.3d 1263 (2000). In *Lehrer*, this court upheld a clause in an employment resignation agreement, under which a psychiatrist agreed not to apply or work for two state hospitals. The State suggests that the *Lehrer* ruling precludes an argument that a no-reapply clause violates the public

11

No. 38784-4-III
*Elgiadi v. Washington State University*

policy against discrimination. But this court limited its ruling to Lehrer's contention that the clause worked an unlawful restraint of trade for a physician.

WSU mentions that Saleh Elgiadi has yet to apply for reemployment. This comment impliedly invokes the ripeness doctrine. Nevertheless, the State does not expressly ask the court to dismiss the case on ripeness grounds. Anyway, one may bring a declaratory judgment action to assess the validity of contract terms before any purported breach. RCW 7.24.020.

Saleh Elgiadi also seeks to strike the renewed employment provision under RCW 49.62.020, which bans unlawful restraints of trade. I decline to address this alternative argument, since my dissent rests on the pillar of retaliation.

Waiver

I emphasize that an employee may, for consideration, waive claims for employment discrimination based on past conduct of the employer. Thus, contrary to the suggestion of WSU, settlement agreements of employment discrimination claims will retain their validity with regard to claims already pending. The question posed by this suit is whether an employee may waive in advance future claims for failure to rehire the employee.

I disagree with the majority that the no-reapply clause applies only to present rights, and not future claims. Instead the clause operates only in the opposite direction. The clause applies only to future rights, and not present rights. One might have expected

12

No. 38784-4-III
*Elgiadi v. Washington State University*

the provision to preclude Elgiadi from merely "seeking reemployment" without any temporal description or "seeking reemployment at *this* time *or* in the future." (Emphasis added.) But WSU inserted the language: "at any time in the future." Even if the agreement read "at this time or in the future," the no-reapply clause still flouted Elgiadi's prerogative to apply for employment in the future. In its appellate argument, WSU emphasizes that Elgiadi has yet to reapply for employment, thus confirming that the no-reapply clause impacts the future, not the present. The clause bars Saleh Elgiadi from employment or seeking employment after the passage of one month, one year, or one decade.

When arguing waiver, WSU does not independently analyze the elements of waiver. The State also does not enlighten the court on how waiver trumps the highest of priorities in preventing discrimination and retaliation. Finally, WSU cites no case law allowing an employer to absolve itself from liability for future conduct, such as denying reemployment.

Subject to certain exceptions, parties may contract and agree in advance that one shall not be liable for his or her own conduct to another. *Wagenblast v. Odessa School District No. 105-157-166J*, 110 Wn.2d 845, 848, 758 P.2d 968 (1988). Nevertheless, in some circumstances, public policy requires the preservation of an obligation of care owed by one person to another and outweighs our traditional regard for the freedom to contract. *Wagenblast v. Odessa School District*, 110 Wn.2d 845, 849 (1988). For example, an

13

No. 38784-4-III
*Elgiadi v. Washington State University*

employer cannot require an employee to sign a contract releasing the employer from liability for job-related injuries caused by the employer's negligence. RESTATEMENT (SECOND) OF TORTS § 496B, cmt. *f* (AM. L. INST. 1965). Freedom from retaliation for filing a discrimination claim holds the highest of priorities and any release in advance of such a claim must be struck rather than function as a waiver to protections.

Imagine an employment agreement that read that the employee waived, released, and discharged from any liability the employer if the employer pays the employee a lower wage because of his or her race or if the employer routinely hurled racial invectives at the employee. The law would not permit an employee to release in advance an employer from a hostile work environment or from discriminatory treatment based on the employee's race, age, gender, sexual orientation, or religion. Since ridding the workplace from retaliatory treatment deserves an even higher priority, the law must also preclude advance waivers of retaliation claims.

In *Bernhardt v. Los Angeles County*, 339 F.3d 920 (9th Cir. 2003), the court entered a preliminary injunction against the application of the county's alleged policy of settling civil rights suits only on a signed waiver by the plaintiff to forgo recovery of attorney fees. The policy would likely violate the purposes underlying 42 U.S.C. § 1988, which affords successful civil rights plaintiffs recovery of fees. Similarly, the State's demand that any employee sign a waiver of the right to forgo rehiring interferes with the

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38784-4-III
*Elgiadi v. Washington State University*

policy behind rectifying employment discrimination and behind precluding retaliation for opposing discrimination.

Equitable Estoppel

Next in its long list of defenses, WSU asserts equitable estoppel. When arguing equitable estoppel, WSU fails to independently analyze the elements of estoppel. WSU does not enlighten this court on how equitable estoppel trumps the highest of priority in preventing discrimination and retaliation. WSU does not forward any case that upholds, on the basis of estoppel, an agreement to forgo claims for retaliation. The elements of equitable estoppel include: (1) an admission, statement, or act inconsistent with the claim afterward asserted, (2) justifiable reliance by the other party on the faith of such admission, statement, or act, and (3) injury to such other party. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 340, 779 P.2d 249 (1989). Equitable estoppel focuses on justifiable reliance. *Buchanan v. Switzerland Gen. Ins. Co.*, 76 Wn.2d 100, 108, 455 P.2d 344 (1969). Also, a court will apply equitable estoppel only to prevent a manifest injustice. *Kramarevcky v. Department of Social & Health Services*, 122 Wn.2d 738, 743-44, 863 P.2d 535 (1993). Injustice results from an employer relying on terms of an agreement that retaliates against an employee for bringing a racial discrimination claim. WSU cannot and does not argue it justifiably relied on the promise contained in paragraph 3 of the settlement agreement with Saleh Elgiadi.

15

No. 38784-4-III
*Elgiadi v. Washington State University*

Judicial Estoppel

When arguing judicial estoppel, WSU does not independently analyze the elements of the doctrine. WSU does not enlighten the court on how judicial estoppel trumps the highest of priority in preventing discrimination and retaliation.

Judicial estoppel prevents a party from asserting one position in a judicial proceeding and later taking an inconsistent position to gain an advantage. *Ashmore v. Estate of Duff*, 165 Wn.2d 948, 951, 205 P.3d 111 (2009); *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007). The doctrine seeks to preserve respect for judicial proceedings and to avoid inconsistency, duplicity, and waste of time. *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 225, 108 P.3d 147 (2005); *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 906, 28 P.3d 832 (2001). Three factors inform whether judicial estoppel should apply:

> (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538-39 (2007) (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). The doctrine of judicial estoppel protects the integrity of the judicial process, not the interest of a defendant attempting to avoid liability. *Miller v.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38784-4-III
*Elgiadi v. Washington State University*

*Campbell*, 164 Wn.2d 529, 544, 192 P.3d 352 (2008); *Lee v. Jasman*, 183 Wn. App. 27, 68-69, 332 P.3d 1106 (2014), *aff'd*, 183 Wn.2d 633, 354 P.3d 846 (2015).

Saleh Elgiadi never argued to the superior court, during his lawsuit for employment discrimination, that any waiver of the opportunity to reapply for employment survived public policy attack. Elgiadi does not now take any inconsistent position offensive to the judicial system.

When arguing judicial estoppel, WSU asserts that the superior court approved the settlement agreement reached between Saleh Elgiadi and WSU. It cites CP 137-40 as constituting that approval. The document found on those pages in the clerk's papers is a stipulated judgment. The judgment reads that the sum of $295,000 is a just settlement. The judgment does not reference the settlement agreement or approve of any terms in the agreement.

Accord and Satisfaction

When arguing accord and satisfaction, WSU relies on *Lehrer v. Department of Social & Health Services*, 101 Wn. App. 509 (2000), already discussed. WSU does not separately analyze the elements of accord and satisfaction. WSU does not educate this court on how accord and satisfaction outflanks the highest of priorities in preventing discrimination and retaliation.

The principle of accord and satisfaction recognizes a debtor's and creditor's agreement to settle a claim by some performance different from that which is claimed

17

No. 38784-4-III
*Elgiadi v. Washington State University*

due. *Pugh v. Evergreen Hospital Medical Center*, 177 Wn. App. 348, 358, 311 P.3d 1253 (2013). Once the creditor accepts the substituted performance, it amounts to full satisfaction of the claim. *Pugh v. Evergreen Hospital Medical Center*, 177 Wn. App. 348, 358 (2013). An accord and satisfaction, like any contract, can be set aside, in whole or in part, for such reasons as mutual mistake, illegality, or frustration of purpose. *Teel v. Cascade-Olympic Construction Co.*, 68 Wn.2d 718, 720, 415 P.2d 73 (1966); *Paopao v. Department of Social & Health Services*, 145 Wn. App. 40, 46, 185 P.3d 640 (2008). Thus, accord and satisfaction does not preclude Saleh Elgiadi from contending a portion of the settlement agreement to be void because it breaches public policy.

## Severance

I now face the most difficult of the questions posed: what remedy should be granted Saleh Elgiadi. When a court finds one or more provisions in a contract unenforceable, the court must decide whether to remove the unenforceable provisions from the agreement and uphold the remaining terms or invalidate the entire contract. *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 607, 293 P.3d 1197 (2013). Severance is the usual remedy for invalid terms rather than invalidation of the entire agreement. *Woodward v. Emeritus Corp.*, 192 Wn. App. 584, 602, 368 P.3d 487 (2016). Courts are reticent to void the entire agreement especially when the agreement contains a severance clause. *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 607 (2013). Nevertheless, when unconscionable terms pervade an agreement, courts refuse to

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38784-4-III
*Elgiadi v. Washington State University*

rewrite the agreement and instead invalidate the contract. *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 607 (2013). In discerning whether to invalidate an entire arbitration agreement, the Supreme Court compared the number of clauses invalid with the number of remaining clauses and held the entire agreement void because of three unconscionable provisions in a contract containing four provisions. *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598 (2013).

Paragraph 3 contains strong language to the end that WSU would not have settled the earlier lawsuit without the no-reapply clause. Saleh Elgiadi does little to defeat the strong language. Elgiadi also ignores the absence of a severance clause in the agreement. Still, paragraph 3 only addresses what occurs if Elgiadi applies for reemployment. The paragraph indicates that Elgiadi's reapplication for employment breaches the agreement. The paragraph expresses no intent that the entire agreement becomes void if the court annuls the no-reapply clause.

I note that paragraph 3 is only one of fourteen paragraphs in a three-page agreement. Courts are less apt to strike the entire agreement when only one paragraph is void.

This court lacks any evidence of the discussions leading to the settlement agreement. WSU may have inserted the paragraph in the agreement at the last minute without having earlier demanded the clause. A defending party may not later add terms

19

No. 38784-4-III
*Elgiadi v. Washington State University*

to the settlement agreement not negotiated by the time the parties reached an agreement for a sum to dismiss the suit. *Condon v. Condon*, 177 Wn.2d 150, 298 P.3d 86 (2013).

Because the court lacks testimony about any discussions leading to paragraph 3 and because the parties did not litigate below the question of severability, I would remand to the superior court for further proceedings to determine whether to invalidate the entire agreement or strike only paragraph 3. On remand, I would permit Saleh Elgiadi to contend, among other arguments, that the superior court should not invalidate the entire agreement because WSU seeks to benefit from retaliatory action and because WSU should have known not to insert the provision in the settlement agreement. I would also allow Elgiadi to argue that WSU's seeking to void the entire agreement on the basis of the unlawful no-reapply clause constitutes another form of retaliation in violation of RCW 49.60.210(1).

_____
Fearing, J.

20